UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TEXAS ROADHOUSE, INC., et al., ) | |
|                 Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:16-CV-28-JVB-PRC |
| ) | |
| TEXAS CORRAL RESTAURANTS, INC., et al., ) | |
|                 Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on a Defendants' Motion to Compel Discovery Compliance [DE 156] filed on February 7, 2017, by Defendants Texas Corral Restaurants, Inc., Texcor, Inc., Texas Corral Restaurant II, Inc., T.C. of Michigan City, Inc., T.C. of Kalamazoo, Inc., Chicago Roadhouse Concepts, LLC, T.C. of Oak Lawn, Inc., T.C. of Harwood Heights, Inc., Texas Corral Incorporated, Martinsville, Corral, Inc., and Paul Switzer. Plaintiffs Texas Roadhouse, Inc. and Texas Roadhouse Delaware LLC filed a response on February 21, 2017. Defendants filed a reply on February 28, 2017.

This litigation is currently pending on Plaintiffs' Second Amended Complaint. In that pleading, Plaintiffs bring claims of trade dress infringement in violation of 15 U.S.C. § 1125(a) and common law; trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a)(1), enacted state laws of Illinois, Indiana, and Michigan, and common law; deceptive trade practices in violation of Illinois state law; copyright infringement in violation of 17 U.S.C. § 101 *et seq.*; and unfair competition in violation of common law.

Defendants ask the Court to compel Plaintiffs to produce trade dress evidence, franchise agreements, site selection plans and consumer and market research, the identity of Texas Roadhouse's suppliers of its trade dress fixtures, and detailed profit and loss financial information

for each Texas Roadhouse store. Defendants also request that they be awarded their reasonable attorneys' fees incurred in bringing the instant motion.

**ANALYSIS**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery for this cause of action. A party may

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). A party may seek an order compelling discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a). The burden is on the objecting party to show why a particular discovery request is improper. *Medical Assurance Co. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013) (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)).

Defendants ask the Court to compel Plaintiffs to answer interrogatories and produce documents in five categories: trade dress evidence, franchise agreements, site selection plans and consumer and market research, identification of Plaintiffs' suppliers of trade dress fixtures, and detailed profit and loss financial information for each Texas Roadhouse store. Plaintiffs, in response, argue that Defendants failed to comply with Northern District of Indiana Local Rule 37-1 and that Defendants' discovery requests are unduly broad and too burdensome. The parties devote most of their briefs to argument regarding Rule 37-1 and discovery of Plaintiffs' trade dress evidence. The Court will address each category below, beginning with Rule 37-1 and trade dress evidence.

## A. Local Rule 37-1

Plaintiffs argue that Defendants' Motion to Compel is premature because Defendants did not comply with Northern District of Indiana Local Rule 37-1's requirement to certify that the filing party conferred in good faith or attempted to confer with the other affected parties in an effort to resolve the matter raised in a motion to compel without court action.

Defendants' counsel filed a certification in which she certified that counsel first began communicating regarding the instant discovery disputes on October 24, 2016. Defendants' counsel sent discovery deficiency letters on October 24, 2016, December 22, 2016, and January 16, 2017. On November 7, 2016, November 22, 2016, and January 26, 2017, counsel for the parties held telephone conferences on the matter.

A fourth telephone conference was scheduled for February 2, 2017. That conference was never held. On February 1, 2017, Plaintiffs' counsel sent Defendants' counsel an email clarifying Plaintiffs' position regarding the discovery at issue, specifically which restaurants it was choosing to provide discovery on and why. In light of this email, Defendants cancelled the February 2, 2017 teleconference.

Plaintiffs argue that the instant motion should be denied because Defendants failed to confer in good faith. The Court does not so find. The certification and exhibits presented to the Court on this matter show adequate discussion between the parties beginning on October 24, 2016, and the parties' ultimate arrival at an impasse on February 1, 2017. Defendants conferred with Plaintiffs in good faith regarding the discovery at issue and have complied with Local Rule 37-1.

**B. Trade Dress**

Defendants asked for trade dress evidence, including development information, evidence of first use, and duration of use for each of Plaintiffs' claimed trade dress elements. Defendants argue that their discovery requests for this information are proper because the information is necessary to defend against Plaintiffs' claim of trade dress infringement. Specifically, Defendants contend that

> [t[he degree to which each individual element of Plaintiffs' claimed trade dress element is incorporated into each specific store is directly relevant to the strength and protectability of Plaintiffs' trade dress. Similarly, the date by which each element was first displayed at each location goes directly to whether Defendants could have infringed upon any claimed [trade dress] and the extent to which such elements post-dated Defendants' stores.

(Mem. at 11, ECF No. 157).

A plaintiff seeking to prevail on a trade dress infringement claim "must establish that: (1) its trade dress is 'inherently distinctive' or has acquired 'secondary meaning'; (2) the similarity of the defendant's trade dress to that of the plaintiff creates a 'likelihood of confusion' on the part of consumers; and (3) the plaintiff's trade dress is 'non-functional.'" *Computer Care v. Serv. Sys. Enterprises, Inc.*, 982 F.2d 1063, 1067-68 (7th Cir. 1992) (citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989)).

Plaintiffs state that, in order to prevail in this lawsuit, they will need to establish whether there is a likelihood of confusion between Plaintiffs' trademark and trade dress and the accused mark and trade dress of Defendants.

> In assessing the likelihood of consumer confusion, [courts] generally consider seven factors: (1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the complainant's mark, (6) any evidence of actual confusion, and (7) the defendant's intent (or lack thereof) to palm off its product as that of another.

*Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461-62 (7th Cir. 2000) (citing *Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993)). The "factors are not a mechanical checklist, and '[t]he proper weight given to each . . . will vary from case to case.'" *Id.* at 462 (alterations in original) (quoting *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996)).

Plaintiffs argue that likelihood of confusion will only be present in locations near both a Texas Roadhouse restaurant and a Texas Corral restaurant, and, consequently, only trade dress evidence for Texas Roadhouse restaurants that are geographically near a Texas Corral restaurant should be produced in discovery. Defendants do not argue that there is evidence pertaining to confusion at any other location. Instead, they argue that the requested trade dress evidence is needed to defend against Plaintiffs' contention that Plaintiffs' trade dress is protectable.

In order to receive protection, trade dress must have a stable visual appearance. *Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, 667 F. Supp. 1221, 1229 (N.D. Ill. 1987); *cf. AM Gen. Corp. v. DaimlerChrysler Corp.* 311 F.3d 796, 815 n.6 (7th Cir. 2002) (requiring specific definition and a stable visual appearance for protection of family or theme trade dress). Plaintiffs assert that their use of the trade dress at issue began with the opening of Store #8 in Louisville, Kentucky. Defendants requested the trade dress evidence in discovery in order to verify or discount the protectability of the trade dress on the basis of inconsistency of the trade dress in appearance or use or on the basis of the timing of Plaintiffs' development of trade dress elements in comparison to Defendants' development of their trade dress. There are nearly 500 Texas Roadhouse locations, and Plaintiffs suggest that evidence of trade dress usage in seven stores—all

6

selected by Plaintiffs—is sufficient inquiry into the protectability of Plaintiffs' trade dress. Further discovery, Plaintiffs argue, would pose an undue burden on Plaintiffs.

Rule 26 directs the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" in determining whether the discovery sought is proportional.

Whether Plaintiffs' trade dress is protected is a foundational matter to the trade dress infringement claim. The Court is not aware of any valuation of this case in the public record, but Plaintiffs ask for several categories of damages, including the maximum amount allowed for willful infringement and for treble damages. The amount in controversy appears to be significant. Regarding access, Plaintiffs suggested that Defendants could visit each Texas Roadhouse location to observe the use of Plaintiffs' trade dress. While it would be possible for Defendants to observe current use by following that suggestion, Defendants would not be able to discern when each trade dress element was first used. Plaintiffs appear to have sole access to that information. The parties on both sides of this case are restaurant owners, though Plaintiffs have nearly 500 locations and Defendants have 11. This does not necessarily correspond directly to a comparison of the parties' resources, but the Court finds no reason to assume that Plaintiffs' resources are less than Defendants' resources. This discovery is vital to the issue of verifying or discounting Plaintiffs' allegation of protected trade dress. Though the Court is sympathetic to Plaintiffs' statement of the burden that producing the discovery requested would create, the Court cannot find that any additional discovery on this issue would outweigh its likely benefit. On the other hand, the Court

7

finds that the full amount of discovery requested by Defendants—which Plaintiffs contend would amount to over one million pages—would be disproportional to the needs of the case and would impose an undue burden on Plaintiffs.

Accordingly, the Court grants in part Defendants' request for this information. Defendants shall select any 10 of Plaintiffs' Illinois stores, any 15 of Plaintiffs' Indiana stores, and any 10 of Plaintiffs' Michigan stores. Plaintiffs must provide trade dress evidence, including development information, evidence of first use, and duration of use for each of Plaintiffs' claimed trade dress elements for (1) the stores selected by Defendants as outlined above, (2) all of Plaintiffs' Louisville, Kentucky stores (including stores located within 10 miles of the Louisville city limits), (3) the seven stores that Plaintiffs identify as "implicated stores," and (4) the five stores most recently opened for business by Plaintiffs before the date of the original filing of this lawsuit.

### C. Franchise Agreements

Defendants asked for franchise agreements for each Texas Roadhouse franchisee. Plaintiffs state that they are seeking to produce all franchise agreements in the United States. Defendants provide no argument in their reply brief that this scope (which excludes international franchise agreements, if any exist) is inappropriate. The Court finds that compelling the production of international franchise agreements, if any, would be disproportional to the needs of this case. Therefore, the Court grants the Motion to Compel as to franchise agreements in the United States only.

### D. Site Selection Plans and Consumer and Market Research

Defendants asked for Texas Roadhouse's site selection plans and consumer and market research, especially, without limitation, Plaintiffs' plans for expansion in Illinois, Indiana, and

8

Michigan. Plaintiffs state that they are producing site selection plans for locations or potential locations in Illinois, Indiana, and Michigan.

In their memorandum in support of the Motion to Compel, Defendants state that they seek production of this information because it will "reveal the dates upon which Plaintiffs considered moving into territories already occupied by Defendants, Plaintiffs' knowledge of Defendants' presence in proposed expansion territories, and Plaintiffs' knowledge of market conditions and probable competitors in proposed expansion territories." (Mem. at 11, ECF No. 157).

In light of Defendants' statement of need for this information, the geographical restriction as proposed by Plaintiffs is appropriate, as information for stores in other states is not relevant, and its production would be unduly burdensome. To the extent that consumer and market research are separate from Plaintiffs' site selection plans, Plaintiffs have not argued that the research should not be produced. Accordingly, the Court orders Plaintiffs to produce site selection plans and consumer and market research for Plaintiffs' expansion in Illinois, Indiana, and Michigan.

**E. Trade Dress Suppliers**

Defendants asked Plaintiffs to identify Texas Roadhouse's suppliers of its trade dress fixtures. This discovery request was made in Interrogatory Number 29. Plaintiffs assert that they have turned over a list of the most common suppliers and that they have produced other documents that identify vendors of trade dress items to Texas Roadhouse restaurants. Plaintiffs have not, however, provided Defendants with a complete substantive response to the Interrogatory, signed under oath. Plaintiffs make no argument to the Court that the Interrogatory is improper. Therefore, the Court orders Plaintiffs to respond to Interrogatory 29.

### F. Detailed Profit and Loss Financial Information

Defendants asked for detailed profit and loss financial information for each individual Texas Roadhouse store. Plaintiffs represent that they turned over some financial documents on November 11, 2016. Plaintiffs state that they produced detailed financial information on a national level for all stores and on a store-by-store basis for the stores for which Plaintiffs can show evidence of a probability of confusion or actual confusion with Defendants' stores.

Plaintiffs take issue with Defendants' own refusal to produce any of Defendants' financial documents in discovery. Discovery of Defendants' financial documents was addressed in a previous motion to compel, and the Court did not order production of those documents due to a pending Motion to Bifurcate liability from damages. The parties briefed the issues in the instant motion before the Court issued its Opinion and Order that declined to order production of Defendants' financial information. As with the earlier motion to compel, the instant motion only asks for financial information on the basis of calculation of damages. Because the Motion to Bifurcate remains pending and the only reason provided for production of financial information is for the calculation of damages, the Motion to Compel as to Plaintiff's financial information is denied without prejudice as premature. Defendants may refile their motion as to production of financial information either after the Court rules on the motion to bifurcate or with argument as to why the requested production falls within the scope of discovery as to liability.

### G. Allocation of Costs of Production of Discovery

Plaintiffs ask the Court to order Defendants to pay for part of all of the reasonable costs of obtaining the information from sources that are not reasonably accessible. Though the Court has the authority to shift the allocation of expenses incurred in responding to discovery, *see* Fed. R. Civ. P.

26(c)(1)(B), the Court declines to do so here. The only significantly challenged request brought by Defendants in this motion is the request to compel trade dress evidence. Plaintiffs chose to initiate this litigation, and their Second Amended Complaint references their efforts to maintain a substantially identical look and feel across its nearly 500 locations. Plaintiffs contend that Defendants are using "discovery tactics which seem to be designed to drive up the cost of litigation and stall the progression of this case." (Resp. at 21, ECF No. 166). The Court finds, however, that Defendants are seeking this information to prepare a defense against the allegations of the Second Amended Complaint and that shifting the costs of responding to these discovery requests is not warranted, especially in light of the scope of these requests as narrowed by the Court.

### H. Reasonable Expenses

Plaintiffs and Defendants both ask for an award of reasonable expenses under Federal Rule of Civil Procedure 37(a)(5). Because the Court is granting in part and denying in part the Motion to Compel, the proper analysis is found in Rule 37(a)(5)(C). Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." "In determining a reasonable apportionment of fees, the court will look to the relative degree of success of the party seeking fees." *McGrath v. Everest National Ins. Co.*, 2:07 cv 34, 2008 WL 4261075, at *1 (N.D. Ind. Sept. 11, 2008). "However, the degree of success in the motion to compel is not the sole determinant when proportioning fees. The court also will look to the degree to which the objecting party was justified in refusing greater cooperation." *Id.* "District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of attorney's fees requested." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999).

Defendants sought an order compelling five categories of information. The request to compel financial information is denied as moot as premature. Three categories—franchise agreements for each Texas Roadhouse franchisee, site selection plans and consumer and market research, and the identity of Texas Roadhouse's suppliers of its trade dress fixtures—are given little attention by the parties in the briefs. Defendants partially prevailed on the remaining category, trade dress, though with a limitation in scope. Taking into account Defendants' degree of success on the several issues presented in the Motion to Compel and also taking into account Plaintiffs' justification in refusing to cooperate more completely, the Court declines to award reasonable expenses to either party.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part**, **DENIES in part**, and **DENIES without prejudice in part** the Defendants' Motion to Compel Discovery Compliance [DE 156].

The Court **ORDERS** Defendants to provide Plaintiffs with their selected stores for trade dress evidence discovery on or before **May 24, 2017**. The Court **ORDERS** Plaintiffs to respond to discovery requests and produce documents as ordered herein on or before **June 26, 2017**. Any motion for an extension of Plaintiffs' deadline must show good cause for the extension and provide a summary of actions taken to comply with this Opinion and Order.

SO ORDERED this 10th day of May, 2017.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT